Calvin Chang (SBN 277851)
CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
Telephone:    916.538.0225
cal@callawapc.com

Attorneys for Plaintiff SANDEEP RAI

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

12/22/2025 6:51:10 AM

Clerk of the Superior Court
By N. Lopez          ,Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

### (Unlimited Jurisdiction)

| | |
|---|---|
| SANDEEP RAI, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>HEADLIGHT HEALTH, INC., a Delaware corporation; SOKYAHEALTH MEDICAL GROUP, P.C., a California corporation; and DOES 1 through 20,<br><br><br>        Defendants. | CASE NO.    25CU067838C<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>1) **DISCRIMINATION - SEX** (Cal. Govt. Code § 12940(a), *et seq.*;<br><br>2) **INTERFERENCE PREGNANCY DISABILITY LEAVE** (Cal. Govt. Code § 12940(a)(1), *et seq.*;<br><br>3) **FAILURE TO ACCOMMODATE** (Cal. Govt. Code § 12940(m), *et seq.*;<br><br>4) **FAILURE TO ENGAGE INTERACTIVE PROCESS** (Cal. Govt. Code § 12940(n));<br><br>5) **RETALIATION** (Cal. Govt. Code § 12940(h));<br><br>6) **INTERFERENCE/RETALIATION CFRA** (Cal. Govt. Code § 12945.2);<br><br>7) **FAILURE TO PREVENT DISCRIMINATION** (Cal. Govt. Code § 12940(k));<br><br>8) **Whistleblower Retaliation** (Cal. Lab. Code § 1102.5(b); |

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

**INTRODUCTION**

1.      This action arises from Defendants' discrimination and retaliation against Plaintiff, a licensed psychotherapist, after she disclosed a high-risk pregnancy and sought information regarding pregnancy-related leave and benefits. Despite Plaintiff's strong performance and full-time status, Defendants subjected her to unfounded performance criticism, pressured her to accept a demotion to a non-benefited role that would jeopardize leave eligibility, and terminated her employment shortly thereafter. Plaintiff brings this action for pregnancy discrimination, sex discrimination, disability discrimination, retaliation, and interference with protected leave rights under California law.

**JURISDICTION AND VENUE**

2.      Pursuant to the California Constitution jurisdiction is proper in the Superior Court of California, County of San Diego in the State of California. The jurisdiction of this Court is proper for the relief sought herein, and the amount demanded by Plaintiff establishes the required jurisdiction.

3.      Venue as to each Defendant is proper in this judicial district, pursuant to the Code of Civil Procedure section 395, *et seq*. where the wrongful act, fraud, negligence; or the breach of contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or an action arising from a transaction consummated as a proximate result; or in the county where the principal place of business of such corporation is situated, or in the county where the defendants or some of them reside.  Gov. Code section 12965, subd. (c)(3), provides, in part, an action under the FEHA may be brought in any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained and administered,

**PARTIES**

4.      Plaintiff SANDEEP RAI ("Plaintiff"), is an individual residing in the State of Virginia. During all relevant times, Plaintiff was employed by Corporate Defendants.

5.      Defendant HEADLIGHT HEALTH, INC. ("Headlight") is a corporation formed

under the laws of the State of Delaware, and has its headquarters in El Cajon, California. Headlight employed Plaintiff. During all relevant times, Headlight employed more than five and more than 15 employees and was an employer subject to the California Fair Employment and Housing Act ("FEHA").

6. Defendant SOKYAHEALTH MEDICAL GROUP, P.C. ("Sokyahealth") is a corporation formed under the laws of the State of California, and has its headquarters in San Diego, California. Sokyahealth employed Plaintiff. During all relevant times, Sokyahealth employed more than five and more than 15 employees and was an employer subject to the California Fair Employment and Housing Act ("FEHA").

7. Headlight and Sokyahealth jointly employed Plaintiff and will be referred to collectively as either Defendants or Corporate Defendants, unless necessary to distinguish them apart.

8. All named Defendants will be collectively referred to as "Defendants," except where necessary to distinguish them apart. Defendants are persons or entities subject to the provisions of California FEHA.

9. Defendants are further liable for the acts of the other Defendants committed within the scope of their employment and under agency, vicarious liability, or joint liability, and/or ratification.

10. At all times herein mentioned, Defendants, whether or not specifically identified or designated herein as a DOE, and each of them, were the agents, employees, servants, partners, independent contractors, joint ventures and participants with all other Defendants, and with each other, and in doing the things hereinafter mentioned, were agents, employees, servants, partners, joint ventures, and with the consent and permission of the co-Defendants, and each of them.

11. The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 20, are unknown to Plaintiff at this time. Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 20 when their names are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the DOE Defendants is in some manner liable to the Plaintiff for the events and actions alleged herein.

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

12.     Plaintiff is informed and believes, and thereon alleges, that at all times, each Defendant was acting as an agent for each of the other Defendants and each were co-conspirators with respect to the acts and the wrongful conduct alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts in connection with the other Defendants.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff timely exhausted her administrative remedies with the California Civil Rights Department ("CRD") on or about July 17, 2025, when she filed a complaint and charge for discrimination, retaliation; and failing to prevent.   On July 17, 2025, the CRD issued Plaintiff a Right-to-Sue Letter, which Plaintiff subsequently and timely served on Defendants (CRD No. 202507-30330517).     Pursuant to Plaintiff's Right-to-Sue Letter, Plaintiff has one year from the date of the CRD Right-to-Sue Letter to file a complaint.

## GENERAL ALLEGATIONS

### *Employment, Performance Expectations, and Praise*

14.     Plaintiff began her employment by SokyaHealth on June 10, 2024 as a full-time, benefited W-2 psychotherapist. Plaintiff has been fully licensed as a clinical social worker since 2019. By 2024, she was an experienced, senior-level therapist with over five years of post-licensure practice, bringing substantial professional expertise to her role at SokyaHealth. She was employed under terms setting 25 billed hours per week and maintenance of 29 client slots.

15.     Although Plaintiff performed her work remotely from Las Vegas, Nevada, all employment decisions—including hiring, supervision, compensation, and termination—were made by management and executives in San Diego, California, rendering her employment subject to California law. Defendants records relevant to the employment practice in this action are maintained and administered by Defendants in San Diego County.

16.     On September 14, 2024, Headlight formally recognized Plaintiff's strong performance and contribution by issuing a "Bonus Structure" notice announcing an enhanced bonus program for clinicians who exceeded their billed-hour commitments. The notice expressly rewarded clinicians

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

achieving more than 100 percent of their targets—raising the bonus rate to $65 per billed hour beyond that threshold—and confirmed that Plaintiff qualified for this increased bonus in the upcoming pay period. This communication reflected that, at the time, Plaintiff was viewed as performing at or above expectations and meriting additional compensation for exceptional productivity.

17.     Plaintiff met and exceeded all job duties outlined in her employment agreement, including those listed under Section 1.3. As reflected in Exhibit C of the agreement, employees were required to "keep a minimum of 29 open client appointment slots to allow for 25 billed hours." Plaintiff consistently maintained 29 open slots at all times and even agreed to increase her availability to 34 slots in an effort to troubleshoot the causes of lower billed-hour totals. Although Plaintiff did not always reach 25 billed hours per week, this shortfall was unrelated to her performance or work ethic. Plaintiff consistently scheduled more than twenty-nine clients each week. When she was told other clinicians meet this billable expectation, she asked in writing to meet with and speak with these clinicians as peer-to-peer support, but the company did not do this. She asked for a focus group to troubleshoot the no show problem and this request was put in writing and the company did not do this.  Plaintiff was consistently available and prepared to see all scheduled clients and never cancelled or failed to attend any appointment, missed sessions were due solely to client no-shows beyond her control. Plaintiff raised concerns to management that Liz Tester's scheduling team was not filling her available appointment slots. Missed appointment slots and that this under-booking—beyond her control—was affecting her billed hours.

> **"Liz, this week I have 4 empty slots not filled by the care coordination team. I understand the ebbs and flows of referrals, especially in January (with insurance changes) but I am keen to do all I can on my end to improve my metrics so I do need to operate at maximum capacity.  I also do not need a weekly/daily cap on intakes at this time as my priority is to see as many clients as my current availability allows."** (January 31, 2025, email Rai to Dr. Sheth, HR, Falcone, Tester, Rash)

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

18.     Plaintiff proactively exceeded these requirements, increasing her availability to 31 and then 34 weekly slots to account for no-shows, and received praise from supervisors with no documented performance concerns until after disclosing her pregnancy.

### Systemic Scheduling Issues and Pretextual Performance Criticism

19.     Defendants' own internal communications confirm that productivity shortfalls during this period were team-wide and caused by factors outside clinicians' control. In August 2024, management circulated an internal email acknowledging that team productivity had declined to approximately 83.8 percent and attributing the decline to no-shows, cancellations, and external factors rather than clinician effort. Management instructed clinicians to overschedule by five to ten additional clients per week to compensate for no-shows, implicitly recognizing that missed billed hours were a systemic issue and not the result of individual underperformance.

20.     Plaintiff followed this guidance by maintaining all required appointment slots and expanding her availability beyond contractual minimums. Despite Defendants' knowledge that productivity issues were widespread and operational in nature, Defendants later singled out Plaintiff for adverse action after she disclosed her pregnancy.

21.     During all relevant times, Defendants were responsible for and controlled patient intake, scheduling, and care coordination, including responsibility for filling Plaintiff's required appointment slots. Plaintiff consistently maintained the required number of open appointment slots and expanded her availability beyond contractual requirements.

22.     Any alleged shortfall in billed hours resulted from Defendants' failure to fill available appointment slots, client no-shows, and systemic scheduling issues known to management. Defendants nonetheless pretextually attributed these shortfalls to Plaintiff while disregarding their own control over the inputs necessary to meet productivity metrics.

### Pregnancy Disclosure and Leave-Related Communications

23.     In late 2024, Plaintiff, then 44 years old, disclosed that she was experiencing her first high-risk pregnancy, with an expected due date of June 2025. On October 23, 2024 Plaintiff contacted HR and disclosed her pregnancy when she inquired about needed maternity and medical

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

leave benefits. HR confirmed her pregnancy but falsely told her that, because she resided in Nevada, she was not eligible for California leave protections—despite her employment being based entirely on California licensure, supervision, and patient population. HR further stated that Nevada offered no additional family-leave protections and that FMLA would not apply until one year of service, offering only an undefined "case-by-case" unpaid leave at the company's discretion. Plaintiff also requested short-term disability enrollment information but was never provided any form or opportunity to enroll before her termination. These communications demonstrate that she disclosed her pregnancy in good faith and sought to plan a medically supported leave, but Headlight failed to provide accurate information, guidance, or accommodation, leading directly to her economic loss of protected income and disability benefits. Plaintiff also discussed this with her line manager on several occasions and with HR and with the client bookings team. Up to that point, Plaintiff's employment had been stable and positive, with no performance concerns or disciplinary issues. After the company learned of her pregnancy, Defendants' treatment of Plaintiff changed materially

### *Flex Ultimatum, Benefit Loss, and Termination*

24.     In January 2025, Defendants issued Plaintiff an "Underperformance Notification" and pressured to accept a demotion to a non-benefited "Flex Compensation Plan," despite the fact that her client slots were not being filled due to internal coordination failures, not her conduct.  Prior to this sudden "underperformance" notice, Plaintiff had never received a formal performance evaluation, performance improvement plan, or any progressive discipline. Plaintiff was not given any advance notice that her employment would be terminated, nor was she warned that refusal to accept the Flex Compensation Plan would result in termination. Although Defendants scheduled a meeting to discuss Flex, Plaintiff was never informed that termination would occur at that meeting or that her employment was in jeopardy if she objected. The absence of any documented corrective process underscores that performance was not the true issue.

25.     Defendants' own written materials confirm that the proposed Flex Compensation Plan was a non-benefited position that reduced hours below thresholds required for continued eligibility for employer-provided benefits and job-protected leave. Defendants were aware that moving Plaintiff

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

to Flex would eliminate benefits, reduce hours, and delay or prevent her ability to meet statutory leave eligibility requirements tied to hours worked. Despite this knowledge, Defendants did not offer any option that preserved Plaintiff's full-time status, benefits, or leave eligibility, even though they controlled scheduling, referrals, and intake volume and knew Plaintiff had expanded her availability to meet productivity targets.

26.     During the same time period, Dr. Manish Sheth sent an email to all therapists in the group addressing performance, guidance, contractual commitments, and meeting clinical metrics. Several colleagues of Plaintiff met with Michael Falcone about the notice, and he reportedly admitted the measurement of metrics over that period of time was unfair. Plaintiff is not aware of any similarly situated colleague who was similarly presented with demotion or terminated.

27.     Plaintiff raised repeated objections, both orally and in writing, expressing that the demotion would compromise her eligibility for protected leave and short-term disability benefits. She made these objections to HR and her supervisors, including in a January 31, 2025 email to Dr. Manish Seth. In raising these concerns, Plaintiff was pointing out what she believed were violations of her legal rights to job-protected leave and equal treatment during pregnancy. She told HR and her supervisors that reducing her hours and benefits because she was pregnant would interfere with her need for pregnancy leave. Those disclosures were made in good faith, and management's reaction, cutting her off from communications and ending her employment soon afterward, reflected hostility toward her attempts to assert those rights. Prior to the March 4, 2025 meeting, Plaintiff continued to communicate these objections in good faith and sought clarification, believing the meeting was intended to discuss the Flex proposal rather than to effect an immediate termination.

28.     Once management and HR knew of Plaintiff's pregnancy and her inquiry about medical and leave benefits, SokyaHealth had every reason to support her continued full-time work. She was performing her duties within the company's stated requirements - maintaining all required appointment slots and being continuously available for clients. Any shortfall in billed hours reflected client no-shows and scheduling gaps, not her effort or performance. Rather than addressing those operational problems, the company pressured her to accept a 'Flex' role that reduced hours and

eliminated benefits. No one initiated any discussion about how to sustain her full-time caseload or improve scheduling support. The lack of engagement after learning of her pregnancy underscored management's disregard for her rights.

29. On or about February 2025, Plaintiff complained to her supervisor, Team Leader Brett Rash, about what she believed to be unlawful treatment and disclosing her assertion that firing her during her pregnancy would violate the law. Plaintiff also told Rash that being pushed to a Flex position making her ineligible for FMLA would be illegal. Plaintiff pointed out to Rash that using metrics over the Christmas holiday period was an intentional set up to eliminate her before her pregnancy leave. Rash disclosed to Plaintiff that the company had been taken over by former Amazon technology people who are cutting costs in a ruthless way. This was in response to Plaintiff's discussion about her upcoming pregnancy leave.

30. In February 2025, Plaintiff sent an email message and also told Director of Human Resources JoAnna Castaneda, the same concerns about illegal treatment, but Castaneda disputed Plaintiff, telling Plaintiff being pregnant does not protect her from being fired. Plaintiff further disclosed to Castaneda that she disagreed with what the company was doing. Plaintiff stated to both Rash and Castaneda, "If they change my status, I won't have enough hours for my FMLA leave. I was counting on those benefits, and "if you switch my position you will interfere with my eligibility to receive benefits."

31. On March 4, 2025, during a meeting with senior leadership, including Michael Falcone, Liz Tester, and JoAnna Castaneda, Falcone stated to Plaintiff:

**"because you're pregnant, you seemed overwhelmed, which is why we are talking about the part-time flex option**." (March 4, 2025, Teams Meeting).

When Plaintiff objected, she was immediately <u>terminated</u> and locked out of all systems.

32. After Plaintiff disclosed her pregnancy, supervisors began treating her differently from colleagues who were not pregnant. Only weeks earlier she had been praised for strong performance, but afterward, management focused on her pregnancy rather than her work, questioning whether she was 'overwhelmed' and urging her to move to part-time. During the following weeks she continued

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

objecting that the proposed demotion and metric calculations were unfair and would jeopardize her eligibility for pregnancy-related leave. Shortly thereafter she was terminated and locked out of all systems. The close timing and the direct remarks tying the decision to her pregnancy show that management's stated reasons were not genuine.

33. Throughout this period, similarly-situated therapists were given opportunities to improve metrics, while Plaintiff was denied the same, despite offering to increase her availability further.

34. Defendants acted on stereotypical assumptions that a pregnant employee was "overwhelmed" or unable to continue full-time work, rather than on Plaintiff's actual performance or availability. Defendants made statements directly linking Plaintiff's pregnancy to employment decisions, including proposals to remove her from full-time status.

35. Defendants were aware that Plaintiff was approaching eligibility for protected pregnancy-related and family leave. Defendants took adverse actions with the intent to interfere with, restrain, or deny Plaintiff's ability to exercise those rights by demoting or terminating her before eligibility accrued.

36. Plaintiff had not requested a specific accommodation other than pregnancy-related medical leave and expressly advised Defendants that her pregnancy did not impair her ability to perform her job duties. However, she reported her pregnancy to HR and was clearly asked about FMLA benefits. She expressly stated her pregnancy did not impact her ability to perform her duties, but she was nonetheless treated as impaired and penalized based on assumptions about her pregnancy.

37. SokyaHealth's actions were motivated by a substantial factor because of her pregnancy, high risk pregnancy, disability or perceived disability, sex, and aimed at preventing Plaintiff from becoming eligible for CFRA/FMLA job-protected leave, by demoting her to a position with insufficient hours to meet the statutory 1,250-hour threshold.

38. Plaintiff had worked nearly one year at the time of her termination and was on track to meet all eligibility requirements for CFRA and FMLA leave in June 2025.

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

39.     As to alleged denial of leave, whether PDL, CFRA, FMLA, other leave, it is alleged such denial was interference with those rights, in anticipation of the need for or eligibility for those rights.

40.     During this period, many clinicians across the agency had difficulty meeting billed-hour metrics because of the holiday season and scheduling bottlenecks within care coordination. Plaintiff had no history of performance deficiencies, received no patient complaints, submitted accurate billing, and completed progress notes on time. She maintained attendance and punctuality and kept her LCSW license in good standing.

41.     The company's later claim of "underperformance" does not fit the facts or the broader context. Throughout the same period, client no-shows and coordination gaps depressed billed hours agency-wide. In contrast, Plaintiff consistently maintained all twenty-nine required appointment slots and even expanded to thirty-four to ensure availability. Management knew missed sessions were caused by client cancellations and internal scheduling, not by any failure on her part. Clinicians with similar numbers were not disciplined or terminated. The "performance" rationale appeared only after her pregnancy disclosure, showing that it was not the real reason for management's actions.

42.     At all relevant times, Defendants employed multiple pregnant clinicians and were aware that pregnancy and pregnancy-related leave were routine and foreseeable within their workforce. Despite this, Defendants treated Plaintiff differently from other pregnant employees by singling her out for adverse action immediately after learning of her pregnancy, rather than affording her the same tolerance, flexibility, or continuation of employment provided to others.

43.     Defendants' knowledge that other employees were pregnant or on maternity leave demonstrates that pregnancy-related leave was neither unexpected nor an undue burden to Defendants' operations. Nevertheless, Defendants departed from their usual practices by terminating Plaintiff instead of allowing her to remain employed through pregnancy or transition to protected leave when medically necessary.

44.     Defendants' alleged practice of accommodating other pregnant employees shows that Plaintiff's termination was not driven by business necessity, staffing constraints, or any inability to

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

accommodate pregnancy-related limitations. Rather, Defendants chose to remove Plaintiff from employment despite having successfully managed pregnancy leave for other employees.

45.    Plaintiff was terminated during the final trimester of her pregnancy. As a result, she lost employer-provided health insurance at a critical time and was forced to incur out-of-pocket expenses, including costs associated with breaking her lease and relocating out of state. Plaintiff experienced stress and anxiety related to access to prenatal care, medical expenses, and uncertainty regarding her financial stability while pregnant.

46.    Defendants utilized the Flex Compensation Plan selectively and coercively against Plaintiff after learning of her pregnancy. Although Defendants later asserted that other employees were placed on Flex, Plaintiff was uniquely pressured to accept Flex under threat of termination and loss of benefits.

47.    Upon information and belief, other employees who transitioned to Flex were not pregnant, were not approaching eligibility for protected leave, and were not threatened with termination if they declined Flex. Plaintiff's proposed Flex transition was materially different in that it would have eliminated her benefits, jeopardized her eligibility for protected leave, and reduced statutory protections at a time when Defendants knew she was pregnant.

48.    Defendants did not initiate Flex discussions with Plaintiff until after her pregnancy disclosure. The timing of the Flex proposal, together with statements linking pregnancy to perceived inability to perform, supports a reasonable inference that Flex was used as a mechanism to avoid pregnancy-related obligations.

### Emotional Distress

49.    Following her termination, Plaintiff experienced persistent emotional symptoms, including anxiety, fear, and difficulty sleeping. She sought medical care and was diagnosed by a healthcare provider with an anxiety disorder. Due to concerns about the safety of her unborn child, Plaintiff declined certain prescribed medications.

50.    Plaintiff continues to experience emotional distress following her termination, including ongoing anxiety, depression, and fear regarding her ability to return to work. She has

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

experienced a loss of confidence and professional identity after being terminated during pregnancy. The disruption to her career, financial security, and sense of stability during pregnancy and early motherhood has had a lasting emotional impact.

51.    The unlawful acts described herein constitute violations of the Fair Employment and Housing Act (FEHA), and California Labor Code section 1102.5, among other laws.

52.    As a result of Defendants' unlawful employment practices, Plaintiff was removed from work and stigmatized, denied wages and benefits, lost work assignments, overtime, opportunities to advance in her career, terminated, and suffered emotional distress.

53.    As a direct result of the Defendants' unlawful conduct, Plaintiff has also suffered severe emotional distress and physical symptoms such as anxiety, worry, humiliation, anguish, embarrassment, and loss of self-esteem, sleep disruption, among other conditions.

54.    As set forth by the factual allegations, and further set forth below, the conduct listed above was malicious, fraudulent, and/or oppressive, and was done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions.

### FIRST CAUSE OF ACTION

#### (DISCRIMINATION, SEX (FEMALE)

#### (Cal. Govt. Code § 12940(a) *et. seq.*)

#### (Against All Defendants)

55.    Plaintiff refers to and herein incorporates each above paragraph inclusively.

56.    Defendants are liable as individuals and/or as employers in the state of California, as defined in the California Fair Employment and Housing Act ("FEHA"). Defendants acted as agents, directly or indirectly, of each other, in violating the FEHA and were therefore also employers, or individuals subject to the FEHA, in the state of California, as defined in the California Fair Employment and Housing Act ("FEHA").

57.    The FEHA prohibits discrimination "because of sex," which includes pregnancy, childbirth, and pregnancy-related medical conditions. (Gov. Code § 12926(r)(1).) Employment decisions may not be influenced by stereotypes or assumptions about women's ability to work, future

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

availability, or need for leave.

58.     Defendants further discriminated against Plaintiff on the independent and additional basis of pregnancy and pregnancy-related medical conditions. Plaintiff's pregnancy was not merely incidental to Defendants' conduct but was a central motivating factor in the adverse employment actions taken against her. Defendants expressly tied Plaintiff's pregnancy to perceived inability to perform, alleged "overwhelm," and purported productivity concerns, and relied on pregnancy-based stereotypes rather than Plaintiff's actual job performance.

59.     Defendants' actions constitute unlawful pregnancy discrimination under the FEHA, including discrimination based on pregnancy, childbirth, and related medical conditions, as defined by Government Code section 12926(r) and prohibited by Government Code section 12940(a). Plaintiff's pregnancy was a substantial motivating reason for Defendants' decision to demote, alter her terms and conditions of employment, and terminate her employment.

60.     Government Code section 12940(a) provides it is an unlawful for an employer to discriminate against a person in compensation or in terms of conditions or privileges of employment, on account of that person's sex.

61.     Government Code section 12940, subdivision (a)(3), expressly prohibits intersectional discrimination based on overlapping protected characteristics, including sex and pregnancy related conditions.

62.     Defendants violated Government Code section 12940(a) by discriminating against Plaintiff on the basis of sex and pregnancy-related conditions or belief about them.

63.     The adverse actions taken against Plaintiff were grounded in gender-based assumptions - that a pregnant woman could not meet productivity targets or remain a reliable full-time clinician and would cost the company money or interfere with its metrics. Management's decision to remove her from full-time status and terminate her was therefore driven by sex-based bias prohibited under FEHA.

64.     Defendants discriminated against Plaintiff on the basis of her sex (female), in violation

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

of the California Fair Employment and Housing Act. Defendants violated the FEHA when they subjected Plaintiff to adverse employment actions as set forth herein. Plaintiff's sex was a substantial motivating reason for the adverse employment actions taken against her

65.    Plaintiff filed a charge of discrimination with the California Civil Rights Department within one year of the continuing discrimination. The Department issued Plaintiff a right-to-sue letter within one year of the filing of this complaint. Plaintiff has exhausted her administrative remedies.

66.    In engaging in the foregoing conduct, Defendants had knowledge of, aided, abetted, incited, participated in, coerced and/or compelled unlawful employment practices in violation of the FEHA.

67.    As a direct and foreseeable result of the unlawful acts of Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial.

68.    Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

69.    As a result of the unlawful acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

70.    The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and her rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be proven at time of trial.

71.    Plaintiff will also seek and is entitled to recover attorney's fees, expert fees, and costs, in connection with this cause of action under Government Code section 12965(b).

### SECOND CAUSE OF ACTION

#### (DISCRIMINATION, PREGNANCY DISABILITY)

#### (Cal. Govt. Code § 12940(a)(1) *et. seq.*)

#### (Against Corporate Defendants)

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

– 15 –

72.    Plaintiff refers to and herein incorporates each above paragraph inclusively.

73.    Defendants are liable as individuals and/or as employers in the state of California, as defined in the California Fair Employment and Housing Act ("FEHA"). Defendants acted as agents, directly or indirectly, of each other, in violating the FEHA and were therefore also employers, or individuals subject to the FEHA, in the state of California, as defined in the California Fair Employment and Housing Act ("FEHA").

74.    Defendants are an employer in the state of California, as defined in FEHA.

75.    Gov. Code section 12945, subd. (a)(1), provides "It shall be an unlawful employment practice for an employer to refuse to allow a female employee disabled by pregnancy, childbirth, or related medical conditions to take a leave for a reasonable period of time not to exceed four months…" (Gov. Code § 12945(a)(1)). "It is unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under these regulations." (2 CCR § 11036(g)(1))

76.    After Plaintiff disclosed her high-risk pregnancy, Defendants terminated her before she had an opportunity to request or take Pregnancy Disability Leave. California's FEHA and PDL regulations prohibit termination in anticipation of, or to avoid providing, pregnancy-related accommodation or leave. (Gov. Code §§ 12940(a), 12945(a); 2 CCR § 11036(g).)

77.    Defendants' conduct constitutes unlawful interference with Pregnancy Disability Leave rights, including termination in anticipation of the need for pregnancy disability leave and termination for the purpose of avoiding the obligation to provide such leave. An employer violates Government Code section 12945 and its implementing regulations when it discharges an employee because of pregnancy or in order to prevent the employee from exercising pregnancy disability leave rights, even if the employee has not yet formally commenced leave.

78.    Plaintiff was not required to use any specific words or submit a formal leave request in order to be protected. Defendants' knowledge of Plaintiff's high-risk pregnancy and her expressed need for pregnancy-related medical leave triggered Defendants' statutory obligations. Defendants instead chose to terminate Plaintiff to interfere with and deny her pregnancy disability leave rights, in

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

violation of Government Code section 12945 and 2 California Code of Regulations section 11036.

79.     Once the employer was aware of her pregnancy, it was required to engage in an interactive process and allow leave when medically necessary. Ending her employment after at that stage directly violated these statutory protections

80.     Defendants violated Government Code section 12940(a) by discriminating against Plaintiff on the basis of sex and pregnancy-related conditions or belief about those protected characteristics.

81.     Plaintiff's sex and pregnancy were substantial motivating reasons for Defendants' actions.

82.     In engaging in the foregoing conduct, Defendants had knowledge of, aided, abetted, incited, participated in, coerced and/or compelled unlawful employment practices in violation of the FEHA.  Plaintiff's sex was a substantial motivating reason for the defendants' adverse employment action against her.

83.     As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

84.     As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

85.     Plaintiff will also seek and is entitled to recover attorney's fees in connection with this cause of action under Government Code section 12965(b).

### THIRD CAUSE OF ACTION

#### (FAILURE TO ACCOMMODATE DISABILITY)

#### (Cal. Govt. Code § 12940(m))

#### (Against Corporate Defendants)

86.     Plaintiff refers to and herein incorporates each above paragraph inclusively.

87.     Defendants are employers in the State of California, as defined in the California Fair

Employment and Housing Act ("FEHA"). Defendants, and each of them, acted as agents, directly or indirectly, of Defendants violating the FEHA and were therefore also employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA").

88.    Plaintiff communicated her high-risk pregnancy and that she would be needing leave, which is a reasonable accommodation because of disability. Defendants knew that Plaintiff had a disability or perceived that Plaintiff was a disabled person within the meaning of the FEHA, but failed to accommodate Plaintiff's need for accommodation, or continuing accommodation.

89.    In engaging in the foregoing conduct, Defendants aided, abetted, incited, participated in, coerced and/or compelled unlawful employment practices in violation of the FEHA.

90.    Plaintiff's disability or perceived disability was a substantial motivating reason for the Defendants' adverse employment actions against her.

91.    As a direct and foreseeable result of the unlawful acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

92.    As a result of the unlawful acts of Defendant, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

93.    The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and her rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be proven at time of trial.

94.    Plaintiff will also seek and is entitled to recover attorney's fees, expert fees, and costs in connection with this cause of action under Government Code section 12965(b).

## FOURTH CAUSE OF ACTION

### (FAILURE TO ENGAGE IN INTERACTIVE PROCESS)

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

**(Cal. Govt. Code §12940(n))**

**(Against All Employer Defendants)**

95.     Plaintiff re-alleges and incorporates all preceding paragraphs.

96.     Defendants are employers in the state of California, as defined in the California Fair Employment and Housing Act ("FEHA"). Defendants, and each of them, acted as agents, directly or indirectly, of Defendants violating the FEHA and were therefore also employers, or individuals subject to the FEHA, in the state of California, as defined in the FEHA.

97.     In violation of Cal. Gov. Code section 12940, subd. (n), Defendants and each of them, and/or their agents/employees, failed to engage with Plaintiff in an ongoing, timely, good faith, interactive process to determine effective reasonable accommodations, if any, in response to Plaintiff's request for reasonable accommodation of known disability or perceived disability.

98.     In engaging in the foregoing conduct, Defendants aided, abetted, incited, participated in, coerced and/or compelled unlawful employment practices in violation of the FEHA.

99.     Plaintiff's disability or perceived disability was a substantial motivating reason for the Defendants' adverse employment actions against her.

100.     As a direct and foreseeable result of the aforesaid acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial.

101.     As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

102.     The above-described acts of Defendants, by and through their managing agents, officers or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and his rights. The Defendants' conduct described herein was engaged in by managing agents for the Defendant and/or ratified by managing agents. Such acts were despicable, and constitute malice, fraud, and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an amount to be proven at time of trial.

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

103.    Plaintiff will also seek and is entitled to recover attorney's fees and costs, including expert witness fees, pursuant to Gov. Code section 12965(b), et seq.

### FIFTH CAUSE OF ACTION

#### (RETALIATION)

#### (Cal. Govt. Code § 12940(h))

#### (Against Corporate Defendants)

104.    Plaintiff refers to and herein incorporates each above paragraph inclusively.

105.    Defendants are employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA"). Defendants, and each of them, acted as agents, directly or indirectly, of Defendants violating the FEHA and were therefore also employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA").

106.    California Government Code section 12940, subd. (h) prohibits any employer or person from discharging or otherwise discriminating against any person because that person has filed a complaint of discrimination, or opposed discrimination or harassment, forbidden under the FEHA. The FEHA also prohibits retaliation against an employee for requesting an accommodation.

107.    Plaintiff communicated her high-risk pregnancy and that she would be needing leave, which is a reasonable accommodation because of disability. Plaintiff further complained that Defendants threatened actions against her would unlawfully deny her leave rights. Defendants knew that Plaintiff had a disability or perceived that Plaintiff was a disabled person within the meaning of the FEHA, but failed to accommodate Plaintiff's need for accommodation, or continuing accommodation.

108.    Defendant subjected Plaintiff to adverse employment actions within the meaning of the FEHA, a short period of time after Plaintiff's protected conduct in opposing unlawful sexual harassment and discrimination, and filing, and participating in the discrimination complaint procedures, or requesting accommodation.

109.    Plaintiff's protected conduct was a substantial motivating reason for the defendants' adverse employment actions against her.

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

110.    As a direct and foreseeable result of the unlawful acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

111.    As a result of the unlawful acts of Defendant, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

112.    The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and her rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be proven at time of trial.

113.    Plaintiff will also seek and is entitled to recover attorney's fees, expert fees, and costs in connection with this cause of action under Government Code section 12965(b).

## SIXTH CAUSE OF ACTION

### (INTERFERENCE WITH CFRA AND RETALIATION)

### (Cal. Govt. Code § 12945.2)

### (Against Corporate Defendants)

114.    Plaintiff refers to and herein incorporates each above paragraph inclusively.

115.    Defendants are employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA"). Defendants, and each of them, acted as agents, directly or indirectly, of Defendants violating the FEHA and were therefore also employers in the State of California, as defined in the California Fair Employment and Housing Act ("FEHA").

116.    California Government Code section 12945.2, provides: "It is unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by CFRA. (2 CCR § 11094(a)).

117.    Gov. Code section 12945.2(l) - explicitly makes it unlawful to discharge or discriminate against any individual "for opposing any practice made unlawful by CFRA."

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

118.     Defendants were aware Plaintiff would have been eligible and required CFRA shortly before it terminated her employment. Although Plaintiff had not yet reached one year of service, she was only a few months away from CFRA eligibility and had affirmatively informed Defendants of her impending need to take protected leave for her high-risk pregnancy. Terminating her just before that eligibility date—after learning of her pregnancy and intended leave—constitutes unlawful retaliation and interference under the California Family Rights Act and the Fair Employment and Housing Act. (Gov. Code §§ 12940(a), (h), 12945.2; 2 CCR § 11094.)

119.     Defendants' unlawful conduct is independently actionable under FEHA regardless of Plaintiff's ultimate CFRA eligibility, and the CFRA allegations are pled in the alternative to, and not in limitation of, Plaintiff's pregnancy discrimination and retaliation claims under Government Code section 12940.

120.     Employers may not discharge an employee to avoid future leave obligations or frustrate the exercise of statutory rights. Plaintiff communicated her high-risk pregnancy and that she would be needing leave, which is a reasonable accommodation because of disability. Defendants knew that Plaintiff had a disability or perceived that Plaintiff was a disabled person within the meaning of the FEHA, but failed to accommodate Plaintiff's need for accommodation, or continuing accommodation.

121.     Defendant subjected Plaintiff to adverse employment actions within the meaning of the FEHA, a short period of time after Plaintiff's protected conduct in opposing unlawful pregnancy discrimination, retaliation, and requesting accommodation.

122.     Plaintiff's protected conduct was a substantial motivating reason for the defendants' adverse employment actions against her.

123.     As a direct and foreseeable result of the unlawful acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

124.     As a result of the unlawful acts of Defendant, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

125. The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and her rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be proven at time of trial.

126. Plaintiff will also seek and is entitled to recover attorney's fees, expert fees, and costs in connection with this cause of action under Government Code section 12965(b).

## SEVENTH CAUSE OF ACTION

### (FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION)

### (Cal. Govt. Code § 12940(k))

### (Against Corporate Defendants)

127. Plaintiff refers to and herein incorporates each above paragraph inclusively.

128. Defendants are employers in the state of California, as defined in the California Fair Employment and Housing Act ("FEHA"). Defendants, and each of them, acted as agents, directly or indirectly, of Defendants violating the FEHA and were therefore also employers in the state of California, as defined in the FEHA.

129. California Government Code section 12940, subdivision (k) provides it is unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

130. Defendant failed to take all reasonable steps necessary to prevent discrimination and harassment and retaliation from occurring.

131. Plaintiff's protected classification and protected conduct was a substantial motivating reason for the defendants' failure to prevent discrimination, harassment, and retaliation.

132. Plaintiff filed a complaint with the California Department of Fair Employment and Housing within one year of the discrimination. The Department issued Plaintiff right-to-sue letters within one year of the filing of this complaint. Plaintiff has exhausted her administrative remedies.

133. In engaging in the foregoing conduct, Defendants aided, abetted, incited, participated

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

in, coerced and/or compelled unlawful employment practices in violation of the California Fair Employment and Housing Act.

134.    As a direct and foreseeable result of the unlawful acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial.

135.    Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

136.    As a result of the unlawful acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

137.    The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and her rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be proven at time of trial.

138.    Plaintiff will also seek and is entitled to recover attorney's fees in connection with this cause of action under Government Code section 12965(b).

## EIGHTH CAUSE OF ACTION

### (WHISTEBLOWER RETALIATION)

### (Cal. Labor Code § 1102.5(b))

### (Against Corporate Defendants)

139.    Plaintiff refers to and herein incorporates each above paragraph inclusively.

140.    As alleged herein, Corporate Defendants and/or their managerial employees/agents/employees knew or should have known, that employees of Defendant, individually and together in varying combinations, were engaging in the conduct set forth above.

141.    Labor Code section 1102.5, subdivision (b), provides that an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

142.    Plaintiff disclosed information to Defendants' management and Human Resources personnel concerning conduct she reasonably believed violated the Fair Employment and Housing Act, including pregnancy discrimination and interference with protected leave rights. Defendants retaliated against Plaintiff, in part, because they believed she had disclosed or might disclose such violations.

143.    Defendant's discharge of Plaintiff's employment was motivated by unlawful retaliatory animus, because Plaintiff protected activity in part, for her protected activity, in reporting, complaining about, disclosing violations of the California Fair Employment and Housing Act.

144.    As a proximate result of Defendants' actions, and in addition to other damages, Plaintiff is entitled to any penalties available under the Labor Code.

145.    Plaintiff's protected conduct was a contributing factor for the defendants' adverse employment actions against her.

146.    As a direct and foreseeable result of the unlawful acts of said Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

147.    As a result of the unlawful acts of Defendant, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

148.    The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

manner to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and her rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants in an amount to be proven at time of trial.

149.    Plaintiff will also seek and is entitled to recover attorney's fees pursuant to Labor Code section 1102.5, subd. (j), and expert fees, and costs in connection with this cause of action.

WHEREFORE, Plaintiff prays for relief as set forth below.

### **PRAYER FOR JUDGMENT**

Plaintiff prays for judgment against Defendants as follows:

1.  For special, general, and compensatory damages, in an amount according to proof at trial;

2.  For punitive damages, according to proof at trial;

3.  For attorneys' fees, expert fees, and costs, pursuant to Gov. Code § 12965(b), et seq, Labor Code § 1102.5(j), Civ. Code § 1021.5, et seq., and any other applicable statute;

4.  For pre-judgment and post-judgment interest according to any applicable provision of law, according to proof;

5.  For costs of suit;

6.  For Injunctive Relief enjoining Defendants from further violations;

7.  For all other relief, the Court deems appropriate and just.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues that are so triable in the Complaint.

Dated:   December 22, 2025                    CAL LAW APC

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com

By:_____,

Calvin Chang, Esq.

Attorneys for Plaintiff SANDEEP RAI

CAL LAW APC
500 Capitol Mall, Suite 2350
Sacramento, California 95814
www.callawapc.com